Stephen Arthur HOUSTON,
Petitioner–Appellant,

v.

Ernest C. ROE, Warden, Respondent–
Appellee.

No. 98–55251.

United States Court of Appeals,
Ninth Circuit

Argued and Submitted Feb. 1, 1999.

Filed June 8, 1999.

William J. Kopeny, Kopeny & Powell, Irvine, California, for the petitioner-appellant.

Kenneth N. Sokoler, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

Before: D.W. NELSON, KOZINSKI, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Steven Arthur Houston ("Houston") appeals the denial of his 28 U.S.C. § 2254 petition, alleging that his conviction for first degree murder is unconstitutional. We have jurisdiction pursuant to 28 U.S.C. § 2253 (1994), and we affirm.

## BACKGROUND

On September 11, 1987, Houston was convicted by a jury of shooting and killing his wife Donna Johnson ("Johnson"). Houston hid outside Johnson's office with a shotgun he had purchased the day before, and when Johnson exited the building, he shot her. After the shooting, Houston fled briefly to another city, but was apprehended when he returned to his home. At trial, Houston admitted to shooting his wife, but argued that he had acted in a fit of rage when he saw Johnson hug and kiss another man. The jury found Houston guilty of first degree murder, and he was sentenced to life in prison without the possibility of parole.

Houston's conviction was affirmed by the California Court of Appeal, and his petition for review to the California Supreme Court was denied. Subsequently, Houston filed a petition for habeas under 28 U.S.C. § 2254 (1994 & Supp. IV 1998). The district court denied that petition, and this appeal followed.

## STANDARD OF REVIEW

We review de novo a district court's decision to grant or deny a § 2254 habeas petition. *Eslaminia v. White,* 136 F.3d 1234, 1236 (9th Cir.1998). Findings of fact relevant to the district court's decision are reviewed for clear error. *Moran v. McDaniel,* 80 F.3d 1261, 1268 (9th Cir. 1996).

## DISCUSSION

I. Scope of Review

Before addressing the merits of Houston's claim, we note the limited scope of our review. Because Houston filed this petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, the provisions of the Act apply to this petition. See *Jeffries v. Wood,* 114 F.3d 1484, 1495–96 (9th Cir.1997) (en banc); *accord Lindh v. Murphy,* 521 U.S. 320, 335–36, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides in relevant part that

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

In interpreting this section, we have predictably held that

[a] state court decision may not be overturned on habeas review, for example, because of a conflict with Ninth Circuit-based law, but rather a writ may issue only when the state court decision is "contrary to, or involved an unreasonable application of," an authoritative decision of the Supreme Court.

*Moore v. Calderon*, 108 F.3d 261, 264 (9th Cir.1997) (quoting 28 U.S.C. § 2254(d)); *see also Bocian v. Godinez*, 101 F.3d 465, 471 (7th Cir.1996) ("Federal Courts are no longer permitted to apply their own jurisprudence, but must look exclusively to Supreme Court caselaw."). Because all claims presented by Houston in this petition were presented to the state court, we may only grant Houston's petition if his conviction is contrary to "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d).

■ Houston argues that if the AEDPA is read this way, it constitutes a suspension of the writ of habeas corpus and therefore violates Article I, § 9, clause 2, of the Constitution. However, the AEDPA does not suspend the writ; it only requires well-established federal law, as determined by the Supreme Court, before a federal court can reverse a state court decision. Contrary to Houston's argument, the Supreme Court need not have addressed a factually identical case, § 2254(d) only requires that the Supreme Court clearly determine the law. *See Davis v. Kramer*, 167 F.3d 494, 498 (9th Cir.1999), *petition for cert. filed*, 67 U.S.L.W. 3570 (U.S. Mar. 8, 1999) (No. 98–1427).

## II. Individual Sentencing Doctrine

■ Houston argues that the California Penal Code violates the Eighth Amendment by imposing a sentence of life without the possibility of parole ("LWOP") without distinguishing the factors that result in the lesser punishment of life with parole ("LWP").

■ The Eighth Amendment requires that state sentencing guidelines clearly distinguish between criminals sentenced to death and those not sentenced to death. *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). However, the Supreme Court has refused to extend this rule to require states to distinguish between criminals sentenced to LWOP and those sentenced to LWP. *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality).[1] In *Harmelin*, the Court noted that "[i]n some cases ... there will be negligible difference between life without parole and other sentences of imprisonment-for example, a life sentence with eligibility for parole." *Id.* at 996. We therefore hold that the California Penal Code does not violate the Eighth Amendment by failing to extend the *Godfrey* doctrine to LWOP crimes.

## III. Arbitrary and Capricious Application of Death Penalty

■ Houston argues that the California Penal Code violates the Eighth Amendment by establishing vague and arbitrary guidelines for determining when the death penalty may be imposed. Houston specifically argues that the line between non-capital first degree murder by means of lying in wait and capital first degree murder with the special circumstance of lying

---

**1.** Justice Kennedy's concurrence became the holding of the Court because it was the narrowest ground upon which five justices agreed. However, six justices concurred in part IV of Justice Scalia's opinion, which refused to extend the individualized sentencing doctrine to criminals sentenced to LWOP.

in wait has become blurred and makes imposition of the death penalty vague and arbitrary.

■■ The Eighth Amendment prohibits the death penalty from being "imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). "A capital sentencing scheme must ... provide a 'meaningful basis for distinguishing'" the few cases where it is imposed from the cases where it is not. *Id.* (quoting *Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). States are therefore obligated to "define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'" *Id.* at 428 (quoting *Gregg,* 428 U.S. at 196 n. 7).

■ The government correctly argues that Houston lacks standing to bring this argument because he was not sentenced to death. Article III of the Constitution requires that parties challenging the death penalty on Eighth Amendment grounds have standing. *Whitmore v. Arkansas,* 495 U.S. 149, 161, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). To meet the standing requirements of Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The injury must be distinct and palpable not merely speculative, and the harm must be imminent and not hypothetical. *Whitmore,* 495 U.S. at 155.

■ In this case, the government did not seek the death penalty, and Houston was not sentenced to death. There is no risk that he will be arbitrarily sentenced to death in the future for killing Johnson. Houston therefore fails to allege an actual or threatened injury. Houston argues that he could have been sentenced to death

for the crime he was convicted of and therefore has standing. However, "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

## IV. Vagueness

■ Houston argues that California Penal Code § 190.2(a)(15) is unconstitutionally vague. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Houston argues that non-capital first degree murder by means of lying in wait is indistinguishable from capital first degree murder with the special circumstance of lying in wait and therefore encourages arbitrary and discriminatory enforcement.

In this case, the California legislature and courts have created a thin but meaningfully distinguishable line between first degree murder lying in wait and special circumstances lying in wait. *See People v. Superior Court,* 134 Cal.App.3d 893, 184 Cal.Rptr. 870, 872–73 (Cal.Ct.App.1982). First degree murder is statutorily defined as "murder which is perpetrated by means of ... lying in wait." Cal.Penal Code § 189. Special circumstance murder is statutorily defined as murder where the "defendant intentionally killed the victim while lying in wait." Cal.Penal Code § 190.2(15). The distinction is found in the terms "while" and "by means of." California courts read "while" to require that

the lethal acts must begin at and flow continuously from the moment the concealment and watchful waiting ends. If

a cognizable interruption separates the period of lying in wait from the period during which the killing takes place, the circumstances calling for the ultimate penalty do not exist.

*Domino v. Superior Court,* 129 Cal.App.3d 1000, 181 Cal.Rptr. 486, 493 (Cal.Ct.App. 1982). Unlike special circumstances murder while lying in wait, first degree murder by means of lying in wait does not contain a temporal requirement. *See id.* Because there is a distinction between first degree murder by means of lying in wait and capital murder with the special circumstances of lying in wait, California Penal Code § 190.2(a)(15) does not encourage arbitrary enforcement, and is not unconstitutionally vague.[2]

## V. Jury Instructions

■■■ Houston argues that the distinction between special circumstances murder while lying in wait and first degree murder by means of lying in wait was not explained in the jury instructions. We agree. The jury was instructed according to California Jury Instruction Criminal ("CALJIC") 8.81.15 that to find the special circumstance lying in wait "the killing must occur during the same time period, or in an uninterrupted attack commencing no later than the moment concealment ends." That instruction accurately reflects the temporal requirement for special circumstances murder while lying in wait. However, the jury was also instructed according to CALJIC 8.25 that first degree murder by means of lying in wait was "[m]urder which is immediately preceded by lying in wait." That instruction was erroneous. As explained above, first degree murder lying in wait does not contain a temporal requirement. Therefore, in order to be first degree murder by means of lying in wait, the killing did not need to be immediately preceded by lying in wait. The killing could have come long after the lying in wait had ceased.

Although the first degree murder instruction was erroneous, there is no clearly established federal law as determined by the Supreme Court that requires reversal in this case. In fact, the erroneous instruction actually benefitted Houston by increasing the government's burden. In order to prove first degree murder, the government had to perform the more difficult task of proving that the murder was immediately preceded by lying in wait. Requiring the government to satisfy the more stringent burden only helped Houston, which may explain why he did not object to this instruction until after he was convicted. Despite the erroneous instruction, the jury found that there was no clear interruption separating Houston's lying in wait and his act of shooting Johnson. That decision is supported by sufficient evidence introduced at trial. Because there is no clearly established federal law that requires reversal where state law provides a distinction between degrees of murder and an erroneous jury instruction blurs that distinction by increasing the burden on the government, the district court properly denied Houston's petition.

## VI. Burden of Proof

■■■ Houston argues that the district court's jury instruction on special circumstances lying in wait unconstitutionally shifted the burden of proving the lack of a time gap to the defense. In order to challenge a jury instruction on habeas, the defendant must prove that " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole. *See id.*

**2.** For this reason we also reject Houston's arguments that California Penal Code

§ 190.2(a)(15) violates equal protection.

The relevant inquiry is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction' " in an unconstitutional manner. *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

█ It is beyond dispute that the government must prove every element of a crime beyond a reasonable doubt. Thus, a jury instruction that shifts the burden of proof on an element of the crime to the defendant violates due process. *Sandstrom v. Montana*, 442 U.S. 510, 523–24, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In this case, the jury was instructed that

> [i]f there is a clear interruption separating the period of lying in wait from the period during which the killing takes place, so that there is neither an immediate killing nor a continuous flow of the uninterrupted lethal events, the special circumstance is not proved.

After reviewing the entire record, we agree with the well reasoned report and recommendation of Magistrate Judge Chapman that this instruction did not unconstitutionally shift the burden of proof. The instruction simply explains that under California law in order to constitute special circumstance lying in wait, the killing must follow immediately after the lying in wait. It does not relieve the government of its burden of proving that the killing immediately followed the lying in wait. Indeed, CALJIC 8.81.15 specifically states that in order to find the special circumstance of lying in wait, the fact that the murder was committed while the defendant was lying in wait "must be proved." Additionally, the instruction does not say that the defendant must prove the gap, it only says that if there was a gap, then the special circumstance was not proved.

Moreover, the court gave two other instructions that specifically provided that the special circumstance had to be proven by the government. In addition to those instructions, the jury was instructed that the government had to prove guilt beyond a reasonable doubt. Given these clear and repeated instructions, we hold that the jury was accurately instructed on the burden of proof.

█ Houston also argues that the prosecution unconstitutionally shifted the burden of proof in its closing argument. As with improper jury instructions, we look at alleged prosecutorial misrepresentations to determine whether the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). However, "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde*, 494 U.S. at 384. Additionally, the Supreme Court instructs that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647.

In closing, the prosecutor argued as follows

> [w]hat is special circumstance while lying in wait? Having decided that the defendant is guilty of first degree murder you then say whether he was guilty because he premeditated and deliberated about the killing before he got there or because you believed that he waited and watched. You then have to decide was there an uninterrupted action in this waiting and watching. If you find that there was no interruption between the waiting and watching and the time Donna was killed, then you find the special circumstance true.

Viewing this statement in the context of the entire trial, we hold that the prosecutor did not act inappropriately. The prosecutor simply explained the law as it applied to the case and the steps the jury must go through in reaching its conclusion.

The prosecutor did not suggest that Houston had the burden to prove there was a time gap in between the lying in wait and the killing. The prosecution only reasserted the explanation of the jury instruction that, if there was a gap in between the killing and the lying in wait, then special circumstances murder was not proven.

## VII. Jury Instruction on Flight

■■■■■ Houston argues that the district court erred in instructing the jury that the flight of a person immediately after the commission of the crime is itself not enough to prove, but may be considered as evidence of guilt. Houston argues that because the only issue was whether the killing was in the heat of passion or premeditated, the flight instruction was irrelevant and likely misinterpreted by the jury as permitting them to consider flight evidence of premeditation.[3] Houston fails to point to any "clearly established federal law as determined by the Supreme Court" that prohibits giving a flight instruction when the defendant admits committing the act charged. Consequently, this issue is inappropriate for § 2254 review.[4]

## VIII. Prior Bad Acts

■■■ Houston argues that the state court erred in admitting evidence of four prior incidents between himself and Johnson as prior bad acts.[5] The bad acts all involve situations where Houston physically assaulted or chased Johnson. Houston does not argue that this violated clearly established federal law as determined by the Supreme Court and this issue is therefore inappropriate for § 2254 review.[6]

## IX. Effective Assistance of Counsel

Finally, Houston argues that his Sixth Amendment right to effective assistance of counsel was violated by the incompetent performance of his trial counsel. In order to succeed on an ineffective assistance of counsel claim, Houston must prove that his counsel's performance fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Houston bases his ineffective assistance of counsel claim on his prior claims of error, arguing that his counsel's failure to object to the jury instructions, the prosecution's closing argument, and the admis-

3. Houston cites numerous California cases and argues that this instruction was inappropriate under California law. That argument misunderstands the scope of federal habeas. Under federal habeas, we do not address violations of state law. *Estelle*, 502 U.S. at 67–68.

4. Additionally, at trial, Houston claimed that he suffered from temporary lobe epilepsy which led to violent outbursts. The fact that Houston got in his car after he shot Johnson, and then fled is relevant to whether Houston was incapacitated when he shot Johnson. Therefore, admission of the flight instruction was not erroneous.

5. Houston argues that admission of this evidence violated California law. Again we do not address violations of state law in federal habeas petitions. *Estelle*, 502 U.S. at 67–68.

6. Moreover, admission of the prior bad acts seems to have been appropriate. We have held that admission of prior bad acts only violates due process if "there are *no* permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.1991); *see also McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir.1993). In this case, the state court admitted the prior bad acts for the purpose of showing motive and intent. The prior bad acts showed that Johnson had resisted Houston and ran to the police in the past and therefore explains why Houston hid outside Johnson's office before killing her. Moreover, the state court correctly instructed the jury that the prior bad acts were not to be considered as evidence of guilt or predisposition. After the admission of each incident, the state court instructed the jury of the limited nature for which the testimony was being admitted. The state court also gave a jury instruction that limited consideration of the evidence to intent and motive.

sion of prior bad acts proves his counsel was ineffective. As explained above, except for Houston's attorney's failure to object to the erroneous jury instruction, the alleged errors simply were not errors. Because Houston does not satisfy the requirements of *Strickland,* the district court correctly denied his ineffective assistance of counsel claim.

## CONCLUSION

For the reasons stated herein, we affirm the denial of Houston's habeas corpus petition.

AFFIRMED.