**Mitchell Alfred PATTERSON,**
**Petitioner–Appellant,**

v.

**James H. GOMEZ, Director,**
**Respondent–Appellee.**

**No. 99–15530.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1999

Filed Aug. 16, 2000

Charles M. Bonneau, Sacramento, CA, for petitioner-appellant.

Stan Cross, Deputy Attorney General, Sacramento, CA, for respondent-appellee.

Before: SNEED, PREGERSON, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Petitioner Mitchell Alfred Patterson appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner asserts that an instruction requiring the jury to presume him sane at the guilt phase of his murder trial violated the Due Process Clause of the Fourteenth Amendment. We hold in the circumstances of this case that the instruction was constitutional error, and that the error was not harmless. We therefore reverse the decision of the district court.

I

Petitioner had a history of depression leading up to the events in this case. In 1989, he was hospitalized after an attempted suicide. On March 30, 1993, he was experiencing serious marital and financial difficulties, had not slept for three days, and had stopped taking his prescribed psychotropic medications. On that day, petitioner drove his wife and three children several hours from their home in Lincoln, California, a town about an hour east of Sacramento, to his wife's parents' home in Willits, about 140 miles north of San Francisco. Later that day, he left with his 10–year–old daughter, Adrianna, ostensibly to buy ice cream. As they left the house, he told his mother-in-law that his "wife will be happy here. This is where she's always wanted to be."

Petitioner drove south to San Francisco, drove back and forth across the Golden Gate bridge at least twice, and then drove about 200 miles east to the Sierra Nevada mountains. Witnesses saw his pickup truck the next morning on the shoulder of Interstate 80 about ten miles east of Truckee, near the Nevada border, where he had run out of gas. At about 11:30 a.m., he used the car phone of a passing motorist to call his wife and ask her to send her sister to pick them up. Several motorists testified that they saw petitioner and Adrianna walking along Interstate 80 between 11:30 a.m. and sometime after 1:00 p.m.

Between 1:20 and 1:25 p.m., petitioner and Adrianna were sitting beside the road, eating a sandwich they had been given by a passing motorist. A large semi truck approached. Petitioner grabbed Adrianna in his arms, ran onto the freeway, and lunged in front of the truck. The driver swerved into another lane but was unable to avoid them. Adrianna was killed. Petitioner survived with compound fractures in his hands. Petitioner offered various explanations for running in front of the truck: he asserted that it was an "accident"; that he was mentally ill; that he was hallucinating, seeing smoke and people being burned on crosses; that he believed that people were after them who would inflict a "slow and arduous death"; and that he ran onto the freeway to kill himself and Adrianna in order to avoid a worse form of death.

Petitioner was charged with first degree murder in California state court. He pled not guilty and, alternatively, not guilty by reason of insanity. The state court trial was bifurcated into a guilt phase and a sanity phase in accordance with California's standard practice. At the conclusion of the guilt phase trial, the jury was instructed to presume that petitioner was

sane. The jury found petitioner guilty of first degree murder. The same jury then hung on the question of whether petitioner was sane. A second jury, empaneled to try only the sanity question, found petitioner sane.

After exhausting his direct appeals in state court, petitioner brought a petition in federal district court for a writ of habeas corpus under 28 U.S.C. § 2254. He asserted violations of due process because of an alleged insufficiency of the evidence and because of an improper presumption contained in the jury instruction. Affirming the findings and recommendation of the magistrate judge, the district court denied the petition. It then issued a certificate of appealability on petitioner's jury instruction claim.

## II

■■■ We review *de novo* a district court's decision to deny a habeas petition under 28 U.S.C. § 2254. *See Houston v. Roe,* 177 F.3d 901, 905 (9th Cir.1999). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we can reverse a state court decision denying relief only if that decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "Supreme Court need not have addressed a factually identical case[;] § 2254(d) only requires that the Supreme Court clearly determine the law." *Houston,* 177 F.3d at 906. "[O]ur independent review of the legal question ... [must] leave[ ] us with a 'firm conviction' that one answer, the one rejected by the [state] court, was correct and the other, the application of the federal law that the court adopted, was erroneous—in other words that clear error occurred." *Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000).

## III

We first address whether the jury instruction violated the Due Process Clause of the Fourteenth Amendment.

### A

■■■ A jury instruction cannot relieve the state of the burden of proving beyond a reasonable doubt a crucial element of the criminal offense. In *Sandstrom v. Montana,* 442 U.S. 510, 521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held the proper inquiry to be "whether the challenged jury instruction had the effect of relieving the State of the burden of proof ... on the critical question of petitioner's state of mind." If a "reasonable juror could have given the presumption conclusive or persuasion-shifting effect," the instruction is unconstitutional. *Id.* at 519. In *Francis v. Franklin,* 471 U.S. 307, 325, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court held that an instruction was unconstitutional "[b]ecause a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent[.]" We have held that to determine whether a jury instruction unconstitutionally shifts the burden of proof, we must inquire " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction' in an unconstitutional manner." *Houston,* 177 F.3d at 909 (citations and quotations omitted).

In both *Sandstrom* and *Francis,* the Supreme Court held jury instructions invalid for unconstitutionally shifting the burden of proof.[1] In *Sandstrom,* the de-

---

1. We applied *Sandstrom* and *Francis* in *McKenzie v. Risley,* 842 F.2d 1525 (9th Cir. 1988) (en banc), a capital murder case in which the defendant had been convicted of "deliberate homicide" under Montana law. We were split as to whether the errors were harmless, but we were unanimous in holding that the jury instructions violated due process. We quoted samples of the flawed instructions in our opinion:

> [T]he law presumes, that is, the law expressly directs the jury to reason: That an

fendant admitted killing the victim but contended that he did not have the required mental state. If the defendant had acted "purposely or knowingly," he would have been guilty of "deliberate homicide" under Montana law; but if he had acted without that mental state, he would have been guilty of a lesser degree of homicide. After having been instructed that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," the jury convicted defendant of "deliberate homicide." *Sandstrom,* 442 U.S. at 513, 99 S.Ct. 2450. The Supreme Court held that the instruction violated due process:

> Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.
>
> First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

> unlawful act was done with an unlawful intent and also that a person is presumed to intend the ordinary consequences of his voluntary act.
>
> . . . .
>
> Further, unless you are otherwise instructed with regard to a particular presumption, all presumptions are rebuttable; that is, they may be controverted and overcome by other evidence.

* * *

[T]he question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *[In re] Winship* on the critical question of petitioner's state of mind. We conclude that under either of the two possible interpretations of the instruction set out above, precisely that effect would result, and that the instruction therefore represents constitutional error.

*Id.* at 517, 521, 99 S.Ct. 2450 (emphasis in original).

In *Francis,* defendant was convicted under Georgia law of "malice murder," which required the defendant to have acted with malice aforethought. The prosecution contended that defendant had fired the fatal shot deliberately. The defendant contended that he had done so accidentally. The challenged instruction was:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.

*Francis,* 471 U.S. at 311, 105 S.Ct. 1965. The Court held that the instruction violated due process:

> The federal constitutional question is whether a reasonable juror could have understood the two sentences as a mandatory presumption that shifted to the defendant the burden of persuasion on

*Id.* at 1529. We wrote:

> Similar instructions were given on the elements of various offenses. While these instructions did not require the jury to conclusively presume intent, they did permit a rational juror to believe that intent could be found without proof by the prosecution, thereby shifting the burden of proof on this issue to the defense.

*Id.* at 1529–30.

the element of intent once the State had proved the predicate acts.

\* \* \*

The court today holds that contradictory instructions as to intent—one of which imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion—create a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge explains the infirm language sufficiently to eliminate this possibility. If such a reasonable possibility of an unconstitutional understanding exists, "we have no way of knowing that [the defendant] was not convicted on the basis of the unconstitutional instruction."

*Id.* at 316, 322 n. 8, 105 S.Ct. 1965 (quoting *Sandstrom*).

## B

When a defendant pleads not guilty and, in the alternative, not guilty by reason of insanity, California conducts a bifurcated trial.[2] In the first phase, the defendant's guilt is determined without reference to his plea of insanity. If defendant is found guilty, the trial goes on to a second phase in which his legal sanity is determined. Petitioner in this case contended during the guilt phase that he did not have the requisite mental state for first degree murder. During the sanity phase, petitioner contended that he was insane.

First degree murder is defined under California law as "murder"[3] that is a "willful, deliberate, and premeditated killing." Cal.Penal Code § 189. Sanity is defined using a modernized version of the *M'Naghten* Rule: a person is insane if he or she is "incapable of knowing or under-standing the nature and quality of his or her act [or] of distinguishing right from wrong at the time of the commission of the offense." Cal.Penal Code. § 25(b); *see also People v. Skinner,* 39 Cal.3d 765, 768, 217 Cal.Rptr. 685, 704 P.2d 752 (1985).

■ The problem in this case does not lie with California's bifurcated system under which guilt and sanity are determined in separate phases of the trial. Nor does it lie with California's legal definitions of first degree murder or sanity. Rather, the problem lies in what the jury was told to presume about petitioner's mental state.

At the conclusion of the guilt phase, the judge gave the following instruction:

Evidence has been received regarding a mental disease or mental disorder of the defendant at the time of the crime in the Information. You may consider such evidence solely for the purpose of determining whether or not the defendant actually formed the mental state which is an element of the crime charged in the Information, and are [sic] found in the definitions of murder.

If from all the evidence you determine to be credible you have a reasonable doubt whether the defendant formed any required mental state or had the necessary specific intent, you must find that he did not have such mental state or specific intent.

*At the time of the alleged offense charged in the Information, you were[sic] instructed to presume that the defendant was sane.*

(emphasis added).

The first paragraph is closely patterned after California Jury Instructions—Criminal (CALJIC) § 3.32. The second para-

---

**2.** When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed.

Cal.Penal Code § 1026.

**3.** Murder is "the unlawful killing of human being ... with malice aforethought." Cal.Penal Code § 187. Malice aforethought is "a deliberate intention unlawfully to take away the life of a fellow creature." *Id.* § 188.

graph is a specific application of the general jury instruction on reasonable doubt. *See generally* CALJIC § 2.90. The italicized last paragraph is the instruction challenged in this case. It is an accurate technical statement of the law, comporting with California's system of bifurcated trials, but it is not a standard jury instruction in California.

The California Court of Appeal in this case specifically noted that the challenged instruction is not a standard jury instruction. We would go further. Not only is it not a standard instruction, but an earlier version of this instruction was specifically disapproved for use in cases like the one now before us. The 1970 edition of CALJIC § 3.34 provided:

> The intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act.
>
> [For the purposes of the case on trial, you must assume that the defendant was of sound mind at the time of his alleged conduct which, it is charged, constituted the crime described in the information.]

A "Use Note" appended to § 3.34 warned against using the bracketed paragraph: "Do not give second paragraph in a specific intent crime if there is evidence of diminished capacity."

The California Supreme Court in *People v. Burton*, 6 Cal.3d 375, 99 Cal.Rptr. 1, 491 P.2d 793 (1971), analyzed a still-earlier CALJIC instruction that had simultaneously instructed the jury to determine the defendant's intent and to presume that the defendant was sane. The court wrote, "There is certainly a potential conflict in [the earlier] instruction that could well mislead the jury." *Id.* at 390, 99 Cal.Rptr. 1, 491 P.2d 793. The court then approved the newly adopted 1970 CALJIC § 3.34 and its appended Use Note: "We are satisfied that this is a correct and fully adequate way to handle the situation." *Id.* at 391, 99 Cal.Rptr. 1, 491 P.2d 793.

The problem with the instruction given in this case is that it tells the jury to presume a mental condition that—depending on its definition—is crucial to the state's proof beyond a reasonable doubt of an essential element of the crime. Under California law, a criminal defendant is allowed to introduce evidence of the existence of a mental disease, defect, or disorder as a way of showing that he did not have the specific intent for the crime.[4] In a first degree murder case, the evidence would be used to show that he did not willfully deliberate and premeditate the killing. If the jury is required to presume the non-existence of the very mental disease, defect, or disorder that prevented the defendant from forming the required mental state for first degree murder, that presumption impermissibly shifts the burden of proof for a crucial element of the case from the state to the defendant. Whether the jury was required to presume the non-existence of a mental disease, defect, or disorder depends on the definition of sanity that a reasonable juror could have had in mind.

### C

The Supreme Court's source in *Sandstrom* for the lay definition of "presume"

---

4. Under current California law, evidence of mental disease, defect or disorder is not admissible to show diminished capacity per se, but it is admissible to show whether a particular defendant actually had the mens rea required for a specific intent crime:

> Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.

Cal.Penal Code § 28(a).

was the 1974 edition of Webster's New Collegiate Dictionary. Using the most recent edition of that dictionary, we find the following definitions of "sane": "1: proceeding from a sound mind: RATIONAL 2: mentally sound; *esp:* able to anticipate and appraise the effect of one's actions[.]" Merriam Webster's Collegiate Dictionary 1035 (1998). Under these definitions, the instruction "to presume that the defendant was sane" impermissibly relieves the state of its burden to prove beyond a reasonable doubt that defendant had the mental state necessary to commit first degree murder under California law.

■■ In order to convict a defendant of first degree murder, the state must prove beyond a reasonable doubt that the defendant was guilty of "willful, deliberate, and premeditated killing." Where, as here, evidence is introduced at trial that a defendant was suffering from a mental disease, defect, or disorder, the jury is entitled to consider evidence of such disease, defect, or disorder in determining whether the defendant actually had the mental state necessary for first degree murder. But if a jury is instructed that a defendant must be presumed "sane"—that is, "rational" and "mentally sound," and "able to anticipate and appraise the effect of [his] actions,"—a reasonable juror could well conclude that he or she must presume that the defendant had no such mental disease, defect, or disorder. If a juror so concludes, he or she presumes a crucial element of the state's proof that the defendant was guilty of willfulness, premeditation, and deliberation.

■ Under *Francis*, we do not consider a particular instruction in isolation, but rather consider "the potentially offending words . . . in the context of the charge as a whole." 471 U.S. at 315, 105 S.Ct. 1965. Even interpreting "charge" broadly (probably more broadly than *Francis* intended) to include preliminary as well as concluding instructions, we believe that the instruction was constitutionally flawed.

At the beginning of the trial, the judge instructed the jury as follows:

At the conclusion of the testimony in the case in what's called the guilt phase, there will then be oral arguments by the attorneys where they will try to sum up and explain to you exactly what they think the evidence is proved. I will also give you a set of instructions at that time that include all of the instructions other than what are called the concluding instructions, which obviously means I conclude the trial with them after all the arguments are over. Then you will be asked to go out and deliberate on the issue of guilt or innocence. If you return a verdict in that particular case on that particular phase, that will determine where we go from there. And if we have a sanity phase, it is a little different as you heard. Because in the sanity phase the defendant has the burden of proof; and, therefore, he goes first rather than the People. And he presents his evidence. And then they present their evidence after he presents his evidence.

A short time later, the judge reiterated that the guilt phase would come first and the sanity phase second. At the end of the trial, as part of his instructions at the close of the evidence, the judge gave the challenged instruction. Nowhere in his preliminary or concluding instructions did the judge explain that the presumption of sanity was the analytical basis for the bifurcated trial; nowhere did he provide the *M'Naghten* definition of insanity that the jury was asked to presume; and nowhere did he warn the jury that "sane" was being used in something other than the conventional lay sense that the jurors were likely to have had in mind.

We hold that the guilt phase instruction to presume the defendant sane was a violation of the Due Process Clause of the Fourteenth Amendment. The California Court of Appeal's decision that there was no error was, in the words of AEDPA, "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court wrote in *Francis,*

> Because a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of *intent,* and because the charge read as a whole does not explain or cure the error, we hold that the jury charge does not comport with the requirements of the Due Process Clause.

471 U.S. at 325, 105 S.Ct. 1965 (emphasis added). If the italicized word "intent" is changed to "mental state," this language captures our case precisely. AEDPA sets a high standard, but it is satisfied in this case.

We are reluctant to tell the California courts precisely what jury instruction we think they should use in a case such as this, for so long as California's jury instructions comply with the Due Process Clause of the Fourteenth Amendment, we have no authority to choose one instruction over another. As a logical matter, the trial court could have instructed the jury to presume that the defendant was sane; explained to the jury the precise relationship between the first and second phases of the trial; and explained the legal definition of sanity under *M'Naghten* that the jury is asked to presume. Perhaps because of the potential for jury confusion, however, California courts have not chosen to proceed this way. Even if it were our place to do so, we would not quarrel with that choice.

The simplest solution may also be the best solution. We would have found no due process violation in this case if the challenged instruction had simply been omitted. This was the solution adopted for comparable cases in the 1970 edition of CALJIC § 3.34 and endorsed by the California Supreme Court in *People v. Burton.*

We infer from the omission of the challenged instruction from the standard instructions in CALJIC that it is also California's solution under current law.

## IV

We next address whether the error was harmless. A constitutional error is harmless on federal habeas review of a state court conviction unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quotations and citations omitted). "[W]here a judge, in a habeas proceeding, applying this standard of harmless error, is in grave doubt as to the harmlessness of an error, the habeas petitioner must win." *California v. Roy,* 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (internal quotation marks and citations omitted); *see also Bains v. Cambra,* 204 F.3d 964, 977 (9th Cir.2000).

Petitioner's mental state was the primary issue throughout the guilt phase of the trial. Petitioner put on a great deal of evidence of his mental state, including extensive expert psychological testimony. Based on this evidence, he argued that he did not have the mental state necessary for first degree murder. Any presumption that would have relieved the state of its burden to prove a crucial element of such mental state necessarily played an important role in the jury's ultimate determination of guilt.

Aware of the importance of petitioner's evidence concerning his mental state, and equally aware of the importance of the presumption of sanity, the prosecutor in closing argument repeatedly relied on the presumption to tell the jury that petitioner's evidence was legally irrelevant and must be disregarded. The prosecutor argued:

> Mr. Patterson is presumed to be sane. And that[,] in this stage of the proceeding[,] is the law.... [W]hen Mr. Pat-

terson called the psychiatrists[,] he called at the guilt phase and in a sense has put the cart before the horse. Mr. Patterson has attempted to show that because of his mental condition, he didn't form an intent, the intent required or [sic] premeditate or deliberate.... The basis of opinions—and you're going to be instructed to basically disregard any opinion that goes to the ultimate fact. You heard—*the instruction says any opinion from a psychiatrist that goes to intent, premeditation or the ultimate fact[,] disregard. That's the law. At this stage of the proceeding you are to do that. You are to presume he's sane. You are not to accept that opinion.*

(emphasis added). The prosecutor continued:

Those are the elements. Unlawful killing of a human being with malice aforethought and for first degree murder willful, deliberate, premeditated. We talked about motive not being an element. But the motive was provided for us simply by Mr. Patterson. *He's presumed to be sane in this stage of the proceeding. He was sane.*

(emphasis added).

After the jury returned a verdict of guilty, that same jury was asked to decide whether petitioner was sane under the *M'Naghten* definition of sanity. The jury hung on that question, and a second jury was empaneled to determine whether petitioner was sane. Because the *M'Naghten* definition of sanity is harder to satisfy than the lay definition, it is difficult to escape the conclusion that a jury unwilling to find unanimously that petitioner was sane under *M'Naghten* would also have been unwilling, if properly instructed, to find that petitioner had the mental state necessary for first degree murder.

We therefore have "grave doubt" about the harmlessness of the erroneous instruction, *Roy,* 519 U.S. at 5, 117 S.Ct. 337, and believe that it "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710.

## V

We conclude that the challenged jury instruction violated the Due Process Clause of the Fourteenth Amendment and that the error was not harmless. We therefore REVERSE the district court's denial of Patterson's habeas petition, and REMAND the case to the district court with instructions to grant the writ, unless the State of California grants Patterson a new trial within a reasonable period to be set by the district court.