**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FEB 4 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AHKIN RAYMOND MILLS, | No. 17-17197 |
| Petitioner-Appellant, | D.C. No. 5:14-cv-00255-LHK |
| v. | |
| GARY SWARTHOUT, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted December 20, 2018
San Francisco, California

Before: BOGGS,[**] PAEZ, and OWENS, Circuit Judges.

Petitioner-Appellant Ahkin Raymond Mills shot and killed a stranger at a

train station, and after a jury trial in state court, he was convicted of first-degree

murder. The California Supreme Court unanimously affirmed his conviction.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

*People v. Mills*, 286 P.3d 754 (Cal. 2012).[1] He then petitioned for a writ of habeas

corpus. *See* 28 U.S.C. § 2254. The district court denied his petition. We affirm.

We review the district court's decision de novo. *Lopez v. Thompson*, 202

F.3d 1110, 1116 (9th Cir. 2000) (en banc). To obtain habeas relief, Mills must

show that the California Supreme Court's decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). He cannot clear this

high bar.

Mills challenges one jury instruction from the guilt phase of his bifurcated

trial[2] as a violation of due process. The trial court instructed the jury that, "[f]or the

purpose of reaching a verdict in the guilt phase of this trial, you are to conclusively

presume that the defendant was legally sane at the time the offenses [are] alleged

to have occurred." *Mills*, 286 P.3d at 763 n.10. The California Supreme Court

unanimously rejected Mills's claim that this instruction unconstitutionally "told the

jury to presume the existence of a mental state critical to the state's burden of

proof" and to disregard mental-health evidence relevant to his defense theory. *Id.*

at 756.

---

[1] The California Supreme Court's opinion details the facts and state-court
procedural history. *Id.* at 756–57.
[2] Because he raised an insanity defense, his trial was split into guilt and sanity
phases. *See* Cal. Penal Code § 1026(a).

17-17197

Mills now argues that the California Supreme Court evaluated his due-process claim under the wrong standard, and that it improperly relied on the other guilt-phase jury instructions and on *Middleton v. McNeil*, 541 U.S. 433 (2004). He also contends that our decisions in *Hall v. Haws*, 861 F.3d 977 (9th Cir. 2017), *Stark v. Hickman*, 455 F.3d 1070 (9th Cir. 2006), and *Patterson v. Gomez*, 223 F.3d 959 (9th Cir. 2000), compel us to grant him habeas relief. We disagree.

First, the California Supreme Court evaluated Mills's due-process claim under the correct standard. In *Boyde v. California*, the United States Supreme Court held that when a defendant claims that "a single jury instruction . . . is ambiguous and therefore subject to an erroneous interpretation . . . the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." 494 U.S. 370, 380 (1990). The California Supreme Court used this reasonable-likelihood standard. *Mills*, 286 P.3d at 763. Mills relies on pre-*Boyde* cases applying a distinct "reasonable juror" test, but *Boyde* supplanted this earlier standard. *Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991) (explaining that *Boyde* "made it a point to settle on a single standard of review for jury instructions—the 'reasonable likelihood' standard").

Second, the California Supreme Court did not unreasonably apply federal law by relying on the other guilt-phase jury instructions and on the United States

3                                                                  17-17197

Supreme Court's decision in *Middleton*. Since *Boyde*, the Court has repeatedly decided constitutional challenges to a single jury instruction by looking at all of the instructions together, not the challenged instruction in isolation. *See, e.g.*, *Middleton*, 541 U.S. at 438 ("Given three correct instructions and one contrary one, the state court did not unreasonably apply federal law when it found that there was no reasonable likelihood the jury was misled."). *See also Ayers v. Belmontes*, 549 U.S. 7, 19 (2006); *Brown v. Payton*, 544 U.S. 133, 146–47 (2005).

As for *Middleton*, Mills is right that the challenged instruction in that case is not comparable to the one here, but the California Supreme Court did not conflate the substance of the two instructions. It cited *Middleton* only for the methodology—analyzing the challenged jury instruction in light of the other instructions and the closing arguments. *Mills*, 286 P.3d at 764–65. Thus, the California Supreme Court did not err, much less unreasonably apply federal law.

Third, our decisions in *Hall*, *Stark*, and *Patterson* do not require us to grant Mills's petition. *Hall* is not germane to this case, as it involved a different kind of jury instruction that is not evaluated under the *Boyde* test. 861 F.3d at 989–94. *Stark* and *Patterson* are more relevant: Like this case, both involved California murder convictions after bifurcated trials, presumption-of-sanity jury instructions, and mental-health evidence (which the defendants feared the jury would wrongly disregard because of the challenged instructions). We granted habeas relief in both

4                                                                                        17-17197

cases. *Stark*, 455 F.3d at 1078–80; *Patterson*, 223 F.3d at 966–68.

But they do not require the same result here, primarily because of an important difference in the language of the challenged instructions. In *Stark* and *Patterson*, the instructions were to presume the defendant was "sane" at the time of the offense, but here, the instruction was to presume Mills was "*legally* sane." *Compare Stark*, 455 F.3d at 1075, *and Patterson*, 223 F.3d at 964, *with Mills*, 286 P.3d at 763 n.10 (emphasis added). The instructions' use of "sane" instead of "legally sane" was central to our analysis in *Stark* and *Patterson*. *Stark*, 455 F.3d at 1078 (finding a due-process violation in part because the jury was not "warned that 'sane' was being used in a manner other than the conventional lay sense"); *Patterson*, 223 F.3d at 966 (explaining that "if a jury is instructed that a defendant must be presumed 'sane' . . . a reasonable juror could well conclude that he or she must presume that the defendant had no . . . mental disease, defect, or disorder").

Here, by using the phrase "legally sane," the trial court warned the jury that "sane" was *not* being used in its conventional lay sense. The insertion of "legally" reduced the risk of the jury misinterpreting the challenged instruction and disregarding Mills's mental-state evidence. In addition, Mills's guilt-stage theory of imperfect self-defense relied less on mental-health evidence than the theories in *Stark* and *Patterson*. *See Mills*, 286 P.3d at 763; *Stark*, 455 F.3d at 1075; *Patterson*, 223 F.3d at 965. For both of these reasons, Mills's jury was less likely

to apply the challenged instruction in an unconstitutional way than the juries in *Stark* and *Patterson*, and those cases do not control.

Thus, we **AFFIRM** the district court's denial of Mills's § 2254 petition.