641 P.2d 1285
STATE of Arizona, Appellee,

v.

**Luis Rodrigo ARIAS, Appellant.**

**No. 5171.**

Supreme Court of Arizona,
En Banc.

Feb. 16, 1982.
Rehearing Denied March 16, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gary A. Fadell and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Richard Oseran, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant.

HAYS, Justice.

Appellant, Luis Rodrigo Arias, was found guilty after a jury trial of first degree felony murder, kidnapping, aggravated assault, second degree burglary, and theft. The trial court sentenced appellant to life imprisonment on the murder conviction and to various concurrent prison terms on the other convictions. Appellant appeals the conviction for first degree felony murder only. We have jurisdiction pursuant to A.R.S. § 13–4031.

In the early morning hours of May 16, 1979, appellant and Ruben Corrales went to the home of Mary McDiarmid, an 81-year-old retired school principal. After cutting the telephone wires, appellant entered the house through a bathroom window and let Corrales in through the kitchen door. Once inside, the two began checking each room for items of value. After appellant and Corrales entered the victim's bedroom, McDiarmid began to scream. In order to prevent her from screaming and escaping, Corrales held McDiarmid while appellant obtained some towels from the bathroom. According to appellant, Corrales wrapped a towel around McDiarmid's neck and mouth and tied her hands behind her back with bedsheets. Appellant and Corrales left the victim bound and gagged on the floor while they collected McDiarmid's silver, television, decorative mirror, and cash.

The following evening, a friend of the victim discovered McDiarmid's body in the bedroom covered with blankets. Testimony at trial disclosed that Mary McDiarmid died as a result of asphyxiation. The medical examiner stated that the towels placed over the victim's mouth and the positioning of the victim, face down on the floor, were contributing factors to the cause of death.

Appellant raises two related arguments challenging the felony murder conviction. First, he argues that the language in the new felony murder statute requires that the death must further the objectives of the underlying felony. He further contends that there is evidence that McDiarmid's death was accidental and did not facilitate the objectives of the theft, burglary or kidnapping. Appellant maintains that the trial court erred by refusing appellant's requested instructions on the lesser included offenses of first degree murder.

Appellant concedes that under the old felony murder statute, A.R.S. § 13–452 (repealed), a jury could not be instructed on a lesser degree of murder where the evidence indicated that the homicide was committed in the perpetration or attempted perpetration of any of the underlying felonies enumerated in the statute. *See, e.g., State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828 (1981).[1] The present felony murder statute, A.R.S. § 13–1105(A)(2), contains additional language which, appellant contends, signifi-

---

1. Former A.R.S. § 13–452 provided, in pertinent part: "A murder ... *which is committed in the perpetration of, or attempt to perpetrate,* arson, rape, robbery, burglary or mayhem, is murder of the first degree." (Emphasis added).

cantly narrows the application of the felony murder doctrine. § 13–1105(A)(2) provides, in part:

A. A person commits first degree murder if:

2 Acting either alone or with one or more other persons such person commits or attempts to commit sexual assault ..., child molestation ..., narcotics offenses ..., kidnapping ..., burglary ..., arson of an occupied structure ..., robbery ..., escape, and in the course of *and in furtherance of* such offense or immediate flight from such offense, such person or another person causes the death of any person. (Emphasis added).

Appellant points to the "in furtherance" language in support of his contention that the statute now requires that the death, rather than the acts leading to death, must further the felony.

Appellant's position finds support in Gerber, *Criminal Law of Arizona*, § 13–1105 at 158 (1978), in which the author comments:

"The felony-murder rule in subsection (A)(2) may present some problems of interpretation. The ambiguous phrase 'causes death' ... covers most homicidal effects. Death must occur 'in the course of *and* in furtherance of' the underlying crime, a duality not as easily established as in the former law, since that phrase suggests that the death somehow facilitates the criminal objective."

■ We do not find the statute to be ambiguous and disagree with the proposition that the *death* must facilitate the criminal objective. Rather, the application of the felony-murder rule found in § 13–1105(A)(2) hinges upon the resolution of the following question: did the death result from an action taken to facilitate the accomplishment of one or more of the felonies enumerated in § 13–1105(A)(2)? If the answer to this question is in the affirmative, then the felon may be found guilty of first-degree murder.

■ In the present case, appellant admitted that he and Corrales bound and gagged Mrs. McDiarmid in order to finish ransacking her house for valuables. Appellant's actions, which resulted in the death of Mrs. McDiarmid, were clearly "in furtherance of" the burglary and kidnapping.

■ Appellant also argues, however, that § 13–1105(A)(2) requires a malicious intent to cause harm over and above the intent necessary to commit one of the specified felonies.

The simple answer to this contention is found in § 13–1105(B), which states: "Homicide, as defined in subsection A, paragraph 2, of this section, *requires no specific mental state other than what is required for the commission of any of the enumerated felonies*." (Emphasis added). Appellant does not dispute the validity of the burglary and kidnapping convictions; therefore, the trial court did not err in refusing to give the lesser included offense instructions.

■ Finally, appellant argues that failure to give the lesser included instructions was reversible error because it violated appellant's due process rights under *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Beck*, the United States Supreme Court held that a sentence of death may not be constitutionally imposed after a jury verdict of guilt of a capital offense where the jury was not permitted to consider a verdict of guilt of a lesser included offense.

We do not consider *Beck* applicable to § 13–1105(A)(2) for several reasons. *Beck* only dealt with the constitutionality of imposing the death sentence where the jury is not allowed to consider the option of finding the defendant guilty of *a lesser included offense*. The Alabama statute involved in *Beck* specifically indicated that the requisite intent to kill could not be supplied by the felony murder doctrine. As was stated by the Court, "[f]elony murder is thus a lesser included offense of the capital crime of robbery-intentional killing. However, under the statute [Ala.Code § 13–11–2(a)] the judge is specifically prohibited from giving the jury the option of convicting the defendant of a lesser included offense." 447 U.S. at 628, 100 S.Ct. at 2384–85. Un-

**444**

der Arizona law, however, there is no lesser included homicide offense of the crime of felony murder since the *mens rea* necessary to satisfy the premeditation element of first degree murder is supplied by the specific intent required for the felony. *See State v. Ferrari*, 112 Ariz. 324, 328, 541 P.2d 921, 925 (1975). It was not error to refuse defendant's requested instructions.

We have reviewed the record for fundamental error. A.R.S. § 13–4035. Finding none, we affirm the judgment and the sentence of the trial court.

HOLOHAN, C. J., GORDON, V. C. J., and CAMERON and FELDMAN, JJ., concur.