# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEVI JAIMES JACKSON,
   *Petitioner-Appellant,*

   v.

CHARLES RYAN,
   *Respondent-Appellee.*

No. 10-15067

D.C. No.
CV-01-00545-
TUC-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
May 10, 2011—San Francisco, California

Filed September 1, 2011

Before: Betty B. Fletcher and Sidney R. Thomas,
Circuit Judges, and Nancy Gertner, District Judge.[1]

Opinion by Judge Gertner

---

[1]The Honorable Nancy Gertner, United States District Judge for the
District of Massachusetts, sitting by designation.

## COUNSEL

S. Jonathan Young, Law Offices of Williamson & Young, P.C., for the petitioner-appellant.

Terry Goddard, Attorney General; Kent Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section; Diane Leigh Hunt, Assistant Attorney General, Criminal Appeals/Capital Litigation Section, for the respondent-appellee.

## OPINION

GERTNER, District Judge:

In 1993, a jury in an Arizona state court convicted Petitioner-Appellant Levi Jackson ("Jackson") of first degree murder. The evidence presented at trial suggested that the vic-

tim was carjacked by then sixteen-year-old Jackson and two older men, driven to the desert, and shot. The trial court instructed the jury that it could convict Jackson of first degree murder on a theory of either premeditated murder or felony murder. The trial court further instructed that, to find felony murder, "[i]t is enough if the felony and the killing were part of the same series of events."

After the Arizona Supreme Court affirmed his conviction, Jackson petitioned for post-conviction relief ("PCR"), claiming that his trial and appellate counsel had rendered ineffective assistance of counsel ("IAC") by failing to argue either at trial or on appeal that the "same series of events" felony murder instruction unconstitutionally relieved the State of its burden to prove all the elements of felony murder. The state superior court denied Jackson's petition, finding that he did "not establish a colorable claim of ineffective assistance of [trial or] appellate counsel." The Arizona Supreme Court summarily affirmed.

Jackson petitioned for federal habeas relief pursuant to 28 U.S.C. § 2254, raising, *inter alia*, the same ineffective assistance of counsel claims that he had brought in state court. *See Strickland v. Washington*, 466 U.S. 668 (1984). The district court found that the felony murder instruction was not erroneous; that it did not deprive Jackson of due process; and that, therefore, counsel was not ineffective in failing to object to it. *Jackson v. Ryan*, No. CV-01-545-TUC-RCC, 2009 WL 4042910, at *7-11 (D. Ariz. Nov. 18, 2009).

Arizona law required that to convict Jackson of first degree murder under a theory of felony murder, the State had to prove that Jackson caused the death of the victim "in the course of and in furtherance of" the predicate felony. Ariz. Rev. Stat. § 13-1105(A)(2) (1978). The Arizona Supreme Court has construed the "in furtherance of" element to mean that a defendant must have killed the victim "to facilitate the accomplishment of" the felony. *State v. Miles*, 186 Ariz. 10,

15 (1996); *State v. Arias*, 131 Ariz. 441, 443 (1982). But while the trial court initially recited the statutory "in furtherance" language of Arizona's felony murder statute, it went further. It added a different and contradictory admonition— that "[i]t is enough if the felony and the killing were part of the same series of events." Under the circumstances, there is a reasonable likelihood that Jackson's jury would not have understood the need to find the "in furtherance" link between the killing and the underlying felony, thereby relieving the State of its obligation to prove every element of felony murder beyond a reasonable doubt in violation of Jackson's right to due process of law. *See Boyde v. California*, 494 U.S. 370, 380 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991); *Francis v. Franklin*, 471 U.S. 307 (1985); *Sandstrom v. Montana*, 442 U.S. 510 (1979); *In re Winship*, 397 U.S. 358, 363-64 (1970).

**[1]** That finding, however, does not resolve Jackson's habeas petition. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, as recently elaborated by the Supreme Court in *Harrington v. Richter*, 131 S. Ct. 770 (2011), requires several more steps. *Richter* mandates deference even to a state court's summary denial of a habeas petition. *Id.* at 783-85. Deference means that we are to hypothesize the arguments that "could have supported[ ] the state court's decision," and then determine if "fairminded jurists could disagree" that these arguments were unreasonable under federal law. *Id.* at 786. In addition, *Richter* suggests that where the right at issue is ineffective assistance of counsel, habeas review is doubly deferential. *Id.* at 785.

Specifically, Jackson must show: 1) that trial and/or appellate counsel's failure to object to the instruction fell below the professional norms existing at the time of Jackson's trial, *see Strickland*, 466 U.S. at 687-91 (the performance prong); 2) that the state court's conclusion that counsel's performance was adequate in the face of that failure represented an unreasonable application of *Strickland*, *see Richter*, 131 S. Ct. at

785; 3) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694 (the prejudice prong);[2] and 4) that the state court's conclusion to the contrary on the prejudice prong was an unreasonable application of clearly established federal law, *see Richter*, 131 S. Ct. at 785.

Since the district court rejected Jackson's claim that the trial court's felony murder instruction was erroneous, it never reached these questions. *See Jackson*, 2009 WL 4042910, at *10. Furthermore, since Jackson framed the issue in his certificate of appealability as an instruction issue, not an ineffective assistance of counsel claim more broadly, neither party address these issues. Accordingly, we remand for the district court to consider the questions outlined above.

## *BACKGROUND*

### I.  Robbery and Trial[3]

On December 7, 1992, Kevin Miles ("Miles"), Ray Hernandez ("Hernandez"), and Jackson approached Patricia Baeuerlen ("Baeuerlen") as she stopped her car at an intersection in Tucson, Arizona.[4] One of the men pointed a gun at her and ordered her to move over. Jackson, Miles, and Hernandez

---

[2]In order to establish prejudice, Jackson must prove, among other things, that the juror confusion about the "in furtherance of" element " 'had substantial and injurious effect or influence in determining the jury's verdict,' " *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

[3]This section is based on the evidence presented to the jury during Jackson's trial. Notably, the Arizona Supreme Court based its description of the robbery and homicide in *State v. Jackson*, 186 Ariz. 20, 23 (1996), on evidence submitted to the court during the aggravation/mitigation hearing, after the jury had convicted Jackson.

[4]Jackson was 16 years old at the time, and Miles was 24 years old. It is unclear how old Hernandez was.

then got into the vehicle and drove to a desert area on the southeast side of Tucson. Baeuerlen was ordered out of the car, and several minutes later she was fatally injured by a single gunshot wound to the heart. Her body was found about seven hours later.

The next day, Miles left for Phoenix, driving Baeuerlen's car. The police apprehended him early on December 9, 1992, after a high-speed chase. In addition to Baeuerlen's car, they also found her ATM card, credit card, and personal effects in Miles' possession. Jackson's thumb print was found on the car's rearview mirror, on a cassette tape in the car, and on a plastic bag in the trunk. Hernandez's mother found a gun hidden in a hole in the wall of his bedroom closet and turned it over to police. No useable fingerprints were recovered from it. Jackson was arrested December 10, 1992.

On February 26, 1993, Jackson was indicted on one count of first degree murder, one count of kidnapping, and one count of armed robbery. Although Miles and Hernandez were similarly charged, the State tried Jackson separately.[5] Two days before the start of Jackson's trial, Hernandez entered into a plea agreement and agreed to testify against him. Hernandez did not do so, however, until the sentencing phase.

At trial, the State pursued theories of both premeditated murder and felony murder. A state witness claimed to have seen Hernandez and Miles entering a house from which the gun used to kill Baeuerlen was stolen. Evidence of Jackson's fingerprints in Baeuerlen's car and his gang affiliation, along with photographs from a bank ATM camera showing Jackson

---

[5]A jury convicted Miles and sentenced him to death. The Arizona Supreme Court upheld Miles' conviction and death sentence in *Miles*, 186 Ariz. at 13-20. As discussed below, the *Miles* court rejected a challenge to the felony murder instruction similar to the instruction in Jackson's trial. *Id.* at 15. But, unlike Jackson, Miles objected to his felony murder instruction during trial and on direct appeal. *See id.*

using Baeuerlen's ATM card to withdraw money, were introduced. The jury heard that no useable prints were recovered from the gun hidden in Hernandez's closet. They also learned that, after the murder, Miles kept the car and proceeds, while Hernandez hid the gun in his room.

Since neither Miles nor Hernandez testified, the State's account of what happened during the carjacking and murder largely depended on the conflicting accounts Jackson had given to various acquaintances before and after his arrest. In some versions, Jackson said that he had shot Baeuerlen; in others, he reported that either Miles or Hernandez was the gunman.

Jackson did not testify. Based on the various statements Jackson had made and the evidence, Jackson's counsel argued to the jury that Miles and Hernandez stole the gun before Miles carjacked and murdered Baeuerlen and that Jackson was not present during the carjacking or subsequent murder.[6] Jackson further claimed that he was picked up by Miles in Baeuerlen's car after Miles had killed Baeuerlen and that his confessions were false and should be attributed to a troubled teenager "bragging" and "acting tough."

## II.   Jury Instructions and Deliberations

The trial court instructed the jury that it could find Jackson guilty of first degree murder if the State proved either theory —premeditated murder or felony murder—beyond a reasonable doubt. *See* Ariz. Rev. Stat. § 13-1105 (1978). The court further instructed the jury that they did not have to unanimously agree to a single theory of liability, so long as all of them agreed that either theory applied. With respect to felony murder, the court instructed the jury as follows:

---

[6]The trial court precluded Jackson from introducing evidence that, in the months before this offense, Miles committed at least three armed robberies, at least two of which involved female victims.

A person commits first degree murder if such person, acting alone or with one or other persons, commits or attempts to commit robbery or kidnapping, and in the course of and *in the furtherance of such offense*, or the immediate flight from such offense, such person or another person causes the death of any person. This type of first degree murder requires no specific mental state other than that which is required for the commission of the offense of robbery or kidnapping.

"In the course of committing" includes any of the defendant's acts, beginning with the initiation and extending through the flight from a robbery or kidnapping.

With respect to the felony murder rule, insofar as it provides the basis for a charge of first degree murder, it is not necessary that the State prove that the defendant intended to kill.

*With respect to the felony murder rule, insofar as it provides the basis for a charge of first degree murder, it is the law that there is no requirement that the killing occur while committing or engaged in the felony or that the killing be part of the felony. The homicide [need not] have been committed to perpetrate the felony. It is enough if the felony and the killing were part of the same series of events.*

After about seven hours of deliberations, the jury announced that it had found Jackson guilty of first degree murder, kidnapping, and armed robbery.[7] A few days later,

---

[7]The jury did not indicate whether it found Jackson guilty on a premeditated murder theory or a felony murder theory. As the Arizona Supreme Court explained, "[a]t trial, the state proceeded on dual theories of felony murder and premeditated murder, and the jury convicted Jackson by gen-

the jury foreperson sent the trial judge a "confidential" letter, *State v. Jackson*, 186 Ariz. 20, 28-29 (1996), which suggested that they had had problems with the felony murder instruction.[8]

After a mitigation/aggravation hearing, the trial court sentenced Jackson to death.

## III. Direct Appeal and Petition for Post-Conviction Relief

Appeal to the Arizona Supreme Court was automatic because of the death penalty. Although Jackson raised numerous claims of trial and sentencing errors, he did not argue that the felony murder instruction unconstitutionally relieved the State of its obligation to prove every element of the offense or that his trial attorney provided ineffective assistance of counsel by failing to challenge the instruction. *Jackson*, 186 Ariz. at 23. The court affirmed Jackson's convictions and death sentence. *Id.* at 32.

---

eral verdict." *Jackson*, 186 Ariz. at 27. The State has not suggested that the possibility that the jury convicted Jackson of premeditated murder rendered any flaw in the felony murder instruction harmless. In fact, an error with the felony murder instruction alone could be sufficient to require a new trial. *See State v. Lopez*, 158 Ariz. 258, 266 (1988).

[8]The letter stated:

> I thought you might like to know why it appeared for a time we would not be able to reach a verdict. . . . Despite the explicit set of instructions you left us, a few jurors had a difficult time with the felony murder law. We read from your instructions many times and reiterated that whether we personally agreed or disagreed with the law was to be of no consequence in our deliberations. They may have been ready to convict on armed robbery and kidnapping, but balked when it came to first degree murder because he had driven to the murder scene and did not necessarily pull the trigger. The way I and the rest of the jury saw it, if Jackson were convicted of either armed robbery or kidnapping, he was automatically guilty of first degree murder. I think it was primarily (not totally) this philosophical argument that prevented us from reaching a verdict sooner. . . .

Jackson filed for post-conviction relief under Ariz. R. Crim. P. 32, now raising several ineffective assistance of counsel claims, including, *inter alia*, that counsel was ineffective for failing to object to a felony murder instruction that unconstitutionally relieved the State of its burden of proving each element of the offense.[9]

The Arizona Superior Court dismissed Jackson's PCR petition. The court rejected the multiple claims alleging ineffective assistance of trial counsel, including counsel's failure to object to the felony murder instruction, "because they could have been raised on direct appeal and do not state a colorable basis for post-conviction relief." The court also rejected Jackson's multiple claims of ineffective assistance of appellate counsel, including appellate counsel's failure to challenge the felony murder instruction on direct appeal, because counsel's performance did not fall below professional norms and Jackson failed to demonstrate that, but for counsel's allegedly ineffective representation, the Arizona Supreme Court would have decided the appeal differently.

Jackson sought review by the Arizona Supreme Court, renewing, *inter alia*, his *Strickland* claims based upon the

---

[9]In his PCR petition, Jackson articulated the issue as follows:

The trial court's jury instruction that 'it is enough if the felony and the killing were part of the same series of events' was based on a pre-1978 statute and relieved the state of its burden of proving the element of 'in furtherance of,' depriving Mr. Jackson of due process and effective assistance of trial and appellate counsel under the Sixth and Fourteenth Amendments to the United States Constitution and under the Arizona Constitution and also constituting a[n] *ex post facto* law under the United States and Arizona Constitutions.

Jackson had to embed his felony murder instruction claim within his IAC claim because he had not preserved it either at trial or on direct appeal and, thus, was precluded under Ariz. R. Crim. P. 32.2(a)(3) from raising it in his petition for post-conviction relief.

defective felony murder instruction. The court denied review without comment in October 2001.

## IV.   Federal Petition for Habeas Corpus

Later that month, Jackson filed a petition for a writ of habeas corpus in the District Court for the District of Arizona. His petition included the claim at issue here. Since Jackson was 16 years old at the time of his offense, the district court stayed the proceedings while he sought state post-conviction relief under the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551, 568-75 (2005), which held that the Eighth Amendment prohibits the execution of an individual who was under the age of 18 at the time of his capital crime. The state court subsequently vacated Jackson's death sentence and re-sentenced him to life imprisonment with the possibility of release after twenty-five years.

Jackson continued to pursue his federal habeas petition.[10] The district court reviewed Jackson's *Strickland* claim based on the felony murder instruction *de novo*,[11] but denied relief on that claim. *Jackson*, 2009 WL 4042910, at *7-10, *21.[12] The court based its conclusion on the Arizona Supreme Court's decision upholding the conviction of Jackson's co-defendant Miles. *Id.* at *8-10 (citing *Miles*, 186 Ariz. at 15). Miles challenged the same felony murder instruction as Jack-

---

[10]Jackson also amended his habeas petition to include three claims related to his re-sentencing.

[11]The court found that, when the Arizona Superior Court decided Jackson's ineffective assistance of counsel claims with respect to the felony murder instruction, the state court "addressed only the IAC allegations, not the underlying claim." *Jackson*, 2009 WL 4042910, at *7. As such, *de novo* review was appropriate. *Id.* (citing *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)).

[12]The court also found that Jackson had adequately exhausted his ineffective assistance of counsel claims based on the felony murder instruction (as well as all his other claims), a finding that the State has not challenged on appeal. *See id.* at *1-2.

son, except his counsel raised the claim at trial and on direct appeal. *See Miles*, 186 Ariz. at 15. As the district court noted, the Arizona Supreme Court concluded in *Miles* that, notwithstanding the "it is enough" sentence, the instruction as a whole did not mislead the jury because the court also recited the statutory language—"in the course of and in the furtherance of." *Jackson*, 2009 WL 4042910, at *8 (quoting *Miles*, 186 Ariz. at 15).

Recognizing that "it is not the province of a federal habeas court to question a state court's construction of state law," *id.* at *9 (citing *Estelle*, 502 U.S. at 72), and finding no reason to question the state court's resolution of the comparable issue in *Miles*, the district court rejected Jackson's challenge, *id.* at *9-10.[13]

Jackson moved for a certificate of appealability on three issues, one of which was whether his constitutional right to due process was violated by the trial court's felony murder instruction. While he did not move for a certificate on the broader question of ineffective assistance of counsel, the respondent does not argue that the claim was waived.

## *DISCUSSION*

### I. Standard of Review

This Court reviews *de novo* the district court's decision to deny a petition for habeas corpus. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004). Under AEDPA, a federal court cannot grant a state prisoner's habeas petition

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudi-

---

[13]The district court also found that most of the rest of Jackson's claims were subject to the deferential standard of 28 U.S.C. § 2254(d) and denied all of them. *Jackson*, 2009 WL 4042910, at *4-21.

cation of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Barker v. Fleming*, 423 F.3d 1085, 1091 (2005).

Although the State's initial brief did not suggest that the district court erred by reviewing Jackson's habeas petition *de novo*, we asked the parties to submit supplemental briefs in light of *Richter*. We now conclude that *Richter* requires deferential review. *See* 131 S. Ct. at 784-85.

Under *Richter*, when a federal claim has been presented to a state court and the state court has denied relief, it should be "presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 131 S. Ct. at 784-85 (citation omitted). In this case, when Jackson submitted his post-conviction petition for review to the Arizona Supreme Court, he articulated his felony murder instruction claim as a component of his ineffectiveness claims. The Arizona Supreme Court then summarily denied review. Jackson has provided no persuasive reason to overcome the *Richter* presumption that this denial was a decision on the merits, especially given the court's previous decision in *Miles*.

Moreover, although the Arizona Supreme Court did not explain its decision to deny review of the Arizona Superior Court's denial of Jackson's PCR petition, the lower court did explain its decision. The Superior Court found that Jackson's claim of ineffective assistance of trial counsel based on the failure to object to the instruction was insufficient to warrant post-conviction relief both because of Jackson's failure to

raise the claim on direct appeal and because the claim did not "state a colorable basis for post-conviction relief." The Arizona Superior Court similarly found Jackson's claim of ineffective assistance of appellate counsel based on the failure to challenge the felony murder instruction on direct appeal not colorable because of Jackson's inability to show that appellate counsel's performance fell below professional norms and that better representation would have affected the outcome of the appeal.

Under 28 U.S.C. § 2254(d)(1), we must deny Jackson's petition unless the state's adjudication of his *Strickland* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state court's decision is "contrary to" this body of law if it "applies a rule that contradicts the governing law" articulated by the Supreme Court or arrives at a result different than that reached by the Supreme Court in a case with "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

As the Court noted in *Richter*, even when the state court renders a summary denial, under § 2254(d), a habeas court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." 131 S. Ct. at 786.[14]

---

[14]Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, this Court may look to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000).

## II.  Felony Murder Instruction

We begin by considering the challenged felony murder instruction on which Jackson's *Strickland* claim is based. If this instruction is not unconstitutional, then counsel's failure to object was not deficient performance.

**[2]** Due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364. The Due Process Clause of the Fourteenth Amendment thus prohibits the State from using jury instructions that have the effect of relieving the State of that burden. *Francis*, 471 U.S. at 326; *see Patterson v. Gomez*, 223 F.3d 959, 962 (9th Cir. 2000) ("A jury instruction cannot relieve the state of the burden of proving beyond a reasonable doubt a crucial element of the criminal offense.").

According to Jackson, the felony murder instruction was contradictory—initially accurate, telling the jury that the murder must be "in furtherance of" the felony, but later inaccurate, telling the jury that "[i]t is enough if the felony and the killing were part of the same series of events." In considering the challenged instruction, we must determine " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.' " *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380). "A 'reasonable likelihood' is lower than the 'more likely than not' standard but higher than a mere 'possibility.' " *Polk v. Sandoval*, 503 F.3d 903, 910 (9th Cir. 2007) (citing *Boyde*, 494 U.S. at 380).

### A.  Due Process

**[3]** The felony murder statute in effect at the time of Jackson's 1992 offense provides that a person commits first degree murder if (1) that person intentionally and with premeditation causes another's death; or (2):

Acting either alone or with one or more other persons the person commits or attempts to commit [certain enumerated felonies including kidnapping and robbery] and, *in the course of and in furtherance of the offense* or immediate flight from the offense, the person or another person causes the death of any person.

Ariz. Rev. Stat. § 13-1105(A)(1)-(2) (1978) (emphasis added).[15]

**[4]** The meaning of Arizona's felony murder statute, including the meaning of the "in furtherance of" element, is a question of state law. *See Francis*, 471 U.S. at 315-16; *Sandstrom*, 442 U.S. at 516-17. In *Arias*, the Arizona Supreme Court held:

[T]he application of the ["in furtherance of" language in the] felony-murder rule found in § 13-1105(A)(2) hinges upon the resolution of the following question: did the death result from an action taken to facilitate the accomplishment of one or more of the felonies enumerated in § 13-1105(A)(2)? If the answer to this question is in the affirmative, then the felon may be found guilty of first-degree murder.

---

[15]Prior to 1978, Arizona law defined felony murder as murder "committed in . . . the perpetration of, or attempt to perpetrate, arson, rape . . . , robbery, burglary . . . or mayhem . . . ." Ariz. Rev. Stat. § 13-452 (repealed). The Arizona Supreme Court construed this statutory language as meaning that "[t]here is no requirement that the killing occur, 'while committing' or 'while engaged in' the felony, or that the killing be 'a part of' the felony, other than that the few acts be a part of one continuous transaction." *Arizona v. Richmond*, 112 Ariz. 228, 232 (1975) (citations and internal quotation marks omitted). Thus a pre-1978 homicide "need not have been committed 'to perpetrate' the felony," in order to be considered felony murder. *Id.* Arizona amended its felony murder statute in 1978; the revised law was in effect at the time of Jackson's 1992 offense.

131 Ariz. at 443.[16] The court reaffirmed this holding in *Miles*, stating: "A death is 'in furtherance' of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies." 186 Ariz. at 15 (citing *Arias*, 131 Ariz. at 443). As commonly defined, "to facilitate" means "to make easier" or to "help bring about." Merriam-Webster's Collegiate Dictionary 509 (11th ed. 2003).

Reciting the language of Arizona's felony murder statute, the trial court stated that:

> [A] person commits first degree murder if such person, acting alone or with one or other persons, commits or attempts to commit robbery or kidnapping, and in the course of and in the furtherance of such offense, or the immediate flight from such offense, such person or another person causes the death of any person.

However, the court went on to say that the "homicide [need not] have been committed to perpetrate the felony." And, it ended by declaring: "It is enough if the felony and the killing were part of the same series of events." The question is whether, on balance, the introductory sentence reciting the statutory language was sufficient to cure the court's final and incorrect assertion that felony murder had no facilitation requirement. We find that it was not.

**[5]** In assessing how a reasonable juror would have understood the charge, we must pay "careful attention to the words actually spoken to the jury." *Sandstrom*, 442 U.S. at 514 (citing *Ulster Cnty. Court v. Allen*, 442 U.S. 140, 157-59 n.16 (1979)). Two things are clear: A reasonable juror would have

---

[16]The Court rejected the far more strained interpretation of the phrase "in furtherance of" proposed by Arias, namely that "the death, rather than the acts leading to death, must further the felony." *Arias*, 131 Ariz. at 443.

understood the court's opening sentence to mean that there is an "in furtherance of" or facilitation element in felony murder; at the same time, a reasonable juror would have understood the court's final "same series of events" sentence as meaning the opposite—that there must be only a temporal link between the underlying felony and the homicide. In addition, in considering how these contradictory directives would have been reconciled by a reasonable juror, we must look to " 'the context of the overall charge.' " *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). We find three features illustrative: the fact that the "same series" sentence was the court's final word on the elements of felony murder,[17] the use of the phrase "[i]t is enough,"[18] and the lack of any other clarifying instruction. Taking these factors together, we find that a reasonable juror would have resolved the court's contradictory explanations of felony murder by finding that the "same series of events" instruction negated its "in furtherance of" instruction. We hold that in this case, " 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380).

---

[17]Since the "same series of events" instruction offered the last words the jury heard about the relationship between the felony and the homicide, it seems clear that the final sentence would have had much more of a lasting impact on the jury's understanding of the requirements of Arizona's felony murder rule. *See Pulido*, 629 F.3d at 1015 (identifying the importance of the sequence of the instructions). The court mentioned the "in furtherance of" requirement only one time, without any explanation or elaboration. In contrast, the court packaged the "[i]t is enough" language at the end of a paragraph that focused the jury on the very limited nature of the relationship between the homicide and the killing.

[18]The "[i]t is enough" opening phrase of the last sentence told the jurors several things. First, it signaled to the jury to pay close attention. Second, it dismissed any previously recited requirements. Finally, it told the jury that the most important explanation was to come.

**B.** *Miles*

**[6]** *In Miles*, the Arizona Supreme Court considered the same felony murder instruction in the case of Jackson's co-defendant and found that, because "the court gave the 'in the course of and in the furtherance of' language of the statute," the "instruction taken as a whole [did] not mislead the jury." 186 Ariz. at 15 (citation omitted). While the Arizona Supreme Court did not cite to its previous decision in *Miles* when denying Jackson's post-conviction petition, *Richter* counsels that we hypothesize what arguments could have supported the state court's decision and then ask whether fairminded jurists could disagree with those arguments. *See* 131 S. Ct. at 786. We presume that the Arizona Supreme Court was relying upon *Miles* when dismissing Jackson's petition, but we conclude, however, that it was unreasonable for it to do so.

**[7]** The State incorrectly claims that "Jackson presents a quintessential state-law claim that is non-cognizable on federal review and thus does not state a proper ground for federal habeas relief." It has been clear since the Supreme Court's decision in *Sandstrom*—where the Court held that a jury instruction that a person is presumed to intend the ordinary consequences of his voluntary actions "reliev[ed] the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind," 442 U.S. at 521—that a state supreme court "is, of course, the final authority" on the meaning of a statutory phrase under state law. *Id.* at 517. Thus, in this case, the Arizona Supreme Court is the final authority on the meaning of the phrase "in furtherance of" under Arizona law. However, "it is not the final authority on the interpretation which a jury could have given the [felony murder] instruction." *Id.* at 517. " '[W]hether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution," *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380), is a "federal constitutional question," *Francis*, 471 U.S. at 316. In this case, Jackson is not challenging the state court's construction

of its own statute. He is accepting as the premise of his challenge to the jury instruction the repeated statements of the Arizona Supreme Court, first in *Arias*, and later in *Miles*, that "[a] death is 'in furtherance' of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies." *Miles*, 186 Ariz. at 15 (citing *Arias*, 131 Ariz. at 443). Significantly, the State's brief nowhere suggests that these statements are not holdings on the meaning of the "in furtherance of" element. They plainly are, and they are binding on a federal habeas review court.

**[8]** The *Miles* court failed to analyze the words of the instruction as required by federal law. *See Estelle*, 502 U.S. at 72-73; *Boyde*, 494 U.S. at 378-86; *Francis*, 471 U.S. at 313-27; *Sandstrom*, 442 U.S. at 514-27; *In re Winship*, 397 U.S. at 363-64. In support of its contention that "the instruction taken as a whole [did] not mislead the jury," the *Miles* court relied on one state court decision, *State v. Schrock*, 149 Ariz. 433, 440 (1986), and no federal law. *Miles*, 186 Ariz. at 15. The Arizona Supreme Court's decision in *Schrock* was based on the facts of that case. The court found that, given the evidence presented at trial, a misunderstanding of the law would not have made a difference to the outcome. The part of the instruction at issue (the relationship between co-defendants) concerned an aspect of felony murder irrelevant to the theory upon which the jury convicted the defendant. *Schrock*, 149 Ariz. at 440.[19]

---

[19]In *Schrock*, the jury was told that a defendant can be guilty of first degree murder if there is proof of the following two things:

  1. That the Defendant and another person committed a felony such as the crime of robbery; and

  2. In the course of an[d] in furtherance of the crime, the Defendant or the other person caused the death of another person.

149 Ariz. at 440. During deliberations, the jury sent a note asking whether it was "necessary to believe beyond a reasonable doubt that 2 people were

Likewise, as illustrated by its citation to *Schrock*, the *Miles* court answered the question of whether it was likely that the jury misunderstood felony murder law by looking at the facts of the case, finding that "[t]here is no doubt that the murder was 'in furtherance' of the robbery and kidnapping." *Miles*, 186 Ariz. at 15. The court failed to analyze how a reasonable juror might have interpreted the felony murder instruction and did not pay "careful attention to the words actually spoken to the jury," *Sandstrom*, 442 U.S. at 514 (citation omitted); *see also Francis*, 471 U.S. at 322 ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity.").

**[9]** Moreover, the evidence the *Miles* court mustered in evaluating the instruction included facts that it should not have considered, namely evidence elicited at Jackson's aggravation/mitigation hearing rather than during Miles' trial. The *Miles* court cited to the facts outlined in its decision on Jack-

---

involved to convict on the 1st paragraph for 1st degree murder." *Id.* The court responded: "No, the instruction could correctly have read 'The defendant *and/or* another person . . . .' " *Id.* (noting emphasis in original). On appeal, the defendant argued that the instruction was plain error, improperly allowing the jury to find him guilty "even if another person committed the robbery and murder and the defendant was neither a participant nor even an acquaintance of the 'other person.' " *Id.* The Arizona Supreme Court disagreed, finding that the instruction did not mislead the jury because:

> In the instant case, the jury found that *the defendant*, not some other person, had committed the robbery when it found him guilty of armed robbery. Having found the defendant guilty of robbery, the jury could then properly find him guilty of first degree murder, even under the modified instruction. We do not believe the jurors were misled by its possible disjunctive application. *Cf. State v. Avila*, 147 Ariz. 330, 710 P.2d 440 (1985) (no reversible error where, despite failure to instruct on necessity of overt act for conspiracy, the jury necessarily found an overt act by finding defendant guilty of armed robbery).

*Id.*

son's direct appeal. *Miles*, 186 Ariz. at 12 (citing *Jackson*, 186 Ariz. at 20). But those facts came from the transcript of Hernandez's testimony at Jackson's aggravation/mitigation hearing. *Jackson*, 186 Ariz. at 23 (citing Tr. Jan. 19, 1994 at 44). Neither Jackson's nor Miles' jury heard this evidence, meaning this evidence should have had no bearing on evaluating the impact of an unconstitutional instruction.

**[10]** Finally, Jackson's and Miles' cases were factually different.[20] Jackson was only sixteen years old when the carjacking took place; Miles was twenty-four. The day after the carjacking, Miles left for Phoenix, driving Baeuerlen's car. The police apprehended him after a high-speed chase soon thereafter. In addition to Baeuerlen's car, they also found her ATM card, credit card, and personal effects in Miles' possession. Jackson, in contrast, stayed in Arizona and gave inconsistent accounts of the carjacking to a series of acquaintances. A witness saw Miles and Hernandez steal the gun used to kill Baeuerlen, while there was no forensic evidence to indicate that Jackson ever touched the weapon. As a result, the Miles and the Jackson juries likely had very different notions about whether their defendant was the protagonist in the carjacking or the shooter in the desert; the felony murder facilitation ele-

---

[20]In *Boyde*, the Court made clear that "the context of the proceedings" must be considered when evaluating a jury instruction. 494 U.S. at 383; *see id.* at 380-81 ("Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."). The Court repeated this mandate in *Estelle*, 502 U.S. at 72 & n.4, and again in *Victor v. Nebraska*, where it noted that the *Estelle* Court "made clear that the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it," 511 U.S. 1, 6 (1994) (emphasis in original).

ment may well have had a different resonance in Jackson's case.[21]

## C.  *Strickland* and *Richter*

[11]  Our conclusion that the felony murder instruction was unconstitutional does not end the ineffective assistance of trial or appellate counsel inquiry. *See Strickland*, 466 U.S. at 687-91. Nor does it mean that, to the extent that the state court's denial of Jackson's habeas petition was based on the conclusion that counsel's performance was adequate, that conclusion unreasonably applied clearly established Federal law. *See Richter*, 131 S. Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

[12]  As explained above, since the district court has not yet addressed these issues concerning counsel's performance, we remand the case. The district court will have to address the State's claim that Arizona law at the time of Jackson's trial

---

[21]Supporting the inference that Jackson and Miles' juries grappled with the felony murder instruction differently is the fact that Jackson's jury, unlike Miles' jury, sent a note to the court as it was struggling with the meaning of the felony murder instruction, indicating that "three jurors are voting not guilty due to lack of convincing evidence." As discussed *supra* note 8, the foreperson sent the trial judge a "confidential" letter soon after the jury convicted Jackson. *Jackson*, 186 Ariz. at 28. The letter said:

> I thought you might like to know why it appeared for a time we would not be able to reach a verdict. . . . Despite the explicit set of instructions you left us, a few jurors had a difficult time with the felony murder law. We read from your instructions many times and reiterated that whether we personally agreed or disagreed with the law was to be of no consequence in our deliberations.

Of course, as the Arizona Supreme Court observed when affirming Jackson's conviction on direct appeal, the foreperson's letter was inadmissable to impeach the verdict based on Ariz. R. Crim. P. 24.1(d). *Id.* at 28-29.

would not have justified an objection, an issue that bears directly on the performance prong of *Strickland*.[22]

**[13]** If the district court finds that counsel's performance was deficient and that it was unreasonable for the state court to find otherwise, then it must address whether counsel's error with respect to the instruction prejudiced Jackson and whether a contrary state court finding was unreasonable. *See Richter*, 131 S. Ct. at 785; *Strickland*, 466 U.S. at 691-96. In order for

---

[22]The State claims that in *Miles,* the Arizona Supreme Court rejected its earlier holding in *Arias* that felony murder has an "in furtherance of" element that requires the homicide facilitate the murder. This is an incorrect reading of *Miles*, which explicitly endorsed the *Arias* interpretation of the statute, when it cited *Arias* for the proposition that "[a] death is 'in furtherance' of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies." *Miles*, 186 Ariz. at 15 (citing *Arias*, 131 Ariz. at 443). Indeed, immediately after concluding that the instruction did not mislead the jury in Miles' case, the court said: "Nevertheless, we discourage its use, and recommend the use of the statutory language as illustrated in [an Arizona pattern jury instruction guide]." 186 Ariz. at 15. The court would not have condemned the instruction if it accurately stated Arizona law with respect to the "in furtherance of" element of the felony murder statute. (What the Arizona Supreme Court rejected in *Miles* was the claim that the jury instruction would have misled the jury. *Miles*, 186 Ariz. at 15. In addition, the *Miles* court rejected the argument that the 1978 amendment to the felony murder statute "narrowed" the prior statute. *Id.*)

While it is clear that *Miles* endorses *Arias*, the district court will nonetheless need to consider why Arizona courts continued to use the flawed felony murder jury instruction until the Arizona Supreme Court issued its decision in *State v. Martinez*, 218 Ariz. 421 (2008). In *Martinez*, the Arizona Supreme Court again confronted a felony murder jury instruction that said "there is no requirement that the killing occurred 'while committing' or 'engaged in' the felony," and that "[i]t is enough if the felony and the killing were part of the same series of events." *Id.* at 428. Noting that the instruction "used language long absent from Arizona's felony murder statute," the court said: "We have discouraged the use of this instruction because the ["same series of events"] sentence is not an accurate description of Arizona's felony murder statute. *State v. Miles*, 186 Ariz. 10, 15 (1996). . . . [T]he instruction does not accurately state the law and we disapprove of its future use." *Id.*

Jackson to prove prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[23]

## *CONCLUSION*

For the foregoing reasons, we conclude that the felony murder instruction provided to Jackson's jury was unconstitutional. We **REMAND** for further proceedings consistent with this opinion.

---

[23]This analysis will largely overlap with the determination of harm required under *Brecht*, 507 U.S. at 637-38; *see* Patterson, 223 F.3d at 967 ("A constitutional error is harmless on federal habeas review of a state court conviction unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' ") (quoting *Brecht*, 507 U.S. at 637).