**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JUL 11 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LEVI JAMES JACKSON, | No. 10-15067 |
| Petitioner - Appellant, | D.C. No. 4:01-cv-00545-RCC |
| v. | |
| CHARLES L. RYAN, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief District Judge, Presiding

Argued and Submitted September 9, 2013
San Francisco, California

Before: THOMAS, GRABER, and BERZON, Circuit Judges.

Arizona state prisoner Levi Jackson appeals the district court's denial of his

petition for a writ of habeas corpus challenging his conviction for murder,

kidnapping, and armed robbery. We affirm. Because the parties are familiar with

the history of the case, we need not recount it in detail.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Jackson asserts that the state trial court's felony murder instruction violated his due process rights by relieving the prosecution of its burden to prove each element of the offense and, therefore, his counsel violated his Sixth Amendment right to effective assistance of counsel by failing to object to the jury instruction. Under *Strickland v. Washington*, 466 U.S. 668 (1984), Jackson must show that counsel's performance was constitutionally deficient and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 687, 694. We need not determine whether Jackson has shown that his counsel's performance was constitutionally deficient. Whether it was or not, he has not established prejudice within the meaning of *Strickland*, because he has not shown a reasonable probability that the result would have been different. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Arizona law required that, to convict Jackson of first degree murder under a theory of felony murder, the State had to prove that Jackson caused the death of the victim "in the course of and in furtherance of" the predicate felony. Ariz. Rev. Stat. § 13-1105(A)(2) (1978). The Arizona Supreme Court has construed the "in furtherance of" element to mean that a defendant must have killed the victim "to facilitate the accomplishment of" the felony. *State v. Miles*, 918 P.2d 1028, 1033 (Ariz. 1996); *State v. Arias*, 641 P.2d 1285, 1287 (Ariz. 1982). But while the state

trial court initially recited the statutory "in furtherance" language of Arizona's felony murder statute, it went further. It added a different and contradictory admonition—that "[i]t is enough if the felony and the killing were part of the same series of events."

The State alleged that Jackson, Kevin Miles, and Ray Allen Hernandez approached Patricia Baeuerlen as she stopped her car at an intersection in Tucson, Arizona. One of the men pointed a gun at her and ordered her to move over. Jackson, Miles, and Hernandez then got into the vehicle and drove to a desert area on the southeast side of Tucson. Baeuerlen was ordered out of the car, and several minutes later she was fatally shot by a single gunshot wound to the heart. Her body was found about seven hours later. The next day, after a high speed chase, Miles was arrested driving Baeuerlen's stolen car. In addition to recovering Baeuerlen's car, they also found her ATM card, credit card, and personal effects in Miles' possession. Jackson's thumbprint was found on the car's rearview mirror, on a cassette tape in the car, and on a plastic bag in the trunk. Hernandez's mother found a gun hidden in a hole in the wall of his bedroom closet and turned it over to police.

At trial, the state produced video from a bank ATM camera showing Jackson using Baeuerlen's ATM card to withdraw money the same day she was killed. The

State introduced testimony that Jackson had given Baeuerlen's ring to his girl friend. A number of witnesses testified that they saw Jackson with Miles and Hernandez at various times. A number of witnesses saw Jackson in Baeuerlen's car after her death. A witness saw Miles, Hernandez, and Jackson walking to the corner where the carjacking took place. A friend of Baeuerlen's, who was driving just in front of her, saw three or four boys roughly matching the descriptions of Jackson, Miles, and Hernandez standing at the corner where the carjacking took place. Police officers confirmed that Baeuerlen was shot in the chest by a .45 caliber semi-automatic handgun. The State presented testimony that persons matching the description of Miles and Hernandez had stolen a .45 caliber handgun that matched the description of the murder weapon, along with a holster that was subsequently found at the murder scene.

Jackson did not testify at trial, but the state introduced a number of his statements through others. The stories varied:

- He told one witness that he had "killed a lady." Jackson said that he and his friends car-jacked a woman's car, drove it some place, and told her to get out. He then took off her shoes. His friends told him that he had to kill her. He looked at his friends and then shot her in the chest with a .45 caliber handgun.

- While driving Baeuerlen's car shortly after the murder, he told another witness that he had gotten the car "from some old dead lady."

- While driving Baeuerlen's car with another witness, Jackson first said that the car was his, then he said that it was his uncle's, then he finally said that he got the car by taking some old lady out in the desert and "popping" her.

- He asked another witness if he had heard about the carjacking and murder, and then said that "we did it."

- He told another witness that he and a friend were looking for a car they could use. He said his friend had a gun, and gave it to Jackson. Jackson then approached the car from the driver's side, pulled out the handgun, and told the woman to move over. Jackson then got into the driver's seat and his friend got into the backseat. They then drove into the desert and parked the car. His friend ordered the woman out and asked Jackson to keep the car running. Jackson then heard a scream and a gunshot. His friend came back, and they drove back into town.

Although Jackson's version of events varied, there was <u>no</u> version he told in which he did not participate in the crimes and was absent from the murder scene. The common elements from Jackson's statements were that he and his friends kidnapped a women, stole her car, and took her into the desert, where she was killed. The details that he revealed to the witnesses were all consistent with the evidence collected at the crime scene. Because the jury convicted Jackson of the underlying crimes of kidnapping and armed robbery, the jury necessarily rejected Jackson's argument that he did not come into possession of Baeuerlen's property until after her death and that he played no role in her kidnapping.

Jackson's defense, as argued by his counsel, was that there was no physical evidence connecting him with the murder scene and that the witnesses who testified against him were lying. Defense counsel did not argue, as to the felony murder instruction, that the murder, whoever carried it out, was not in furtherance of the underlying crimes. Nor did defense counsel's theory of the case invite the jury to draw a distinction between a "series of events" and "in furtherance" of the underlying crimes.

Therefore, we conclude that Jackson has failed to satisfy *Strickland*'s prejudice prong because he has failed to establish a reasonable probability that, but for his counsel's failure to object to the felony murder instruction, the outcome of the case would have been different. For the same reason, Jackson did not suffer actual prejudice from any due process error resulting from the jury instruction. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Thus, we affirm the judgment of the district court, albeit on different grounds.

**AFFIRMED.**